[S. F. No. 380.    Department One.—August 7, 1896.]

SANTA CRUZ ROCK PAVEMENT CO., APPELLANT, *v.* WILLIAM BRODERICK, AUDITOR, ETC., RESPONDENT.

STREET IMPROVEMENT—CONSTRUCTION OF ACT—IMPROVEMENT OF ACCEPTED STREET—VOID CONTRACT—ABSENCE OF COMPETITION—LIABILITY OF CITY AND COUNTY—MANDAMUS.—Where a contract for a street improvement on an accepted street in the city and county of San Francisco, by paving it with bituminous rock, was let under a resolution of the board of supervisors, without inviting proposals for bids, and without any opportunity for the competition, the contract is unauthorized and void under the street improvement act, which applies to any contract for doing any work authorized by the act, irrespective of the character of the street, or of the mode in which the expense is to be paid, and is in excess of the jurisdiction of the board of supervisors, and the city and county is not liable thereunder, and *mandamus* will not lie to compel the auditor to draw a warrant upon the treasurer for the expense of such improvement.

ID.—REPAIR OF STREET—IMPROVEMENT—PAVING AND MACADAMIZING.—A contract for the pavement of an accepted street with bituminous rock on a macadam foundation, the street having never been so improved before, is not a contract for the repair of the street within the meaning of section 25 of the street improvement act, but is a contract for the original improvement of the street, within the general terms of the act.

ID.—ESTOPPEL OF CITY—AUTHORIZATION FOR PAYMENT—LIMITATION OF POWER OF SUPERVISORS—KNOWLEDGE OF CONTRACTOR.—The fact that the board of supervisors of the city and county of San Francisco assumed to authorize the payment of a demand under a void contract for a street improvement, cannot estop the city; but the board, having no authority to make the contract, can have no authority to order its payment; and the contractor in entering into the contract is chargeable with knowledge of limitations upon the power of the board of supervisors.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. SEAWELL, Judge.

The facts are stated in the opinion of the court.

*J. C. Bates, Denson & DeHaven,* and *Garber, Boalt & Bishop,* for Appellant.

*Garrett W. McEnerney,* and *Charles F. Hanlon,* for Respondent.

HARRISON, J.—The board of supervisors of the city and county of San Francisco passed a resolution July 8, 1895, directing the superintendent of streets to enter into a contract with the appellant to pave Van Ness avenue from Pacific avenue to Jackson street with bituminous rock, at the rate of seven cents per square foot. Under the contract entered into by virtue of said resolution, the appellant completed the work therein named and thereafter presented its demand, duly verified, to be paid out of the street department fund, for the sum of fourteen hundred and forty-seven dollars and ninety-nine cents, and on October 28, 1895, the board of supervisors passed an authorization for the payment of said demand. Upon its presentation to the respondent, who is the auditor of said city and county, that officer refused to indorse his allowance thereon, or in any way to approve or allow the same, whereupon the appellant instituted the present proceeding to compel him to audit and allow said claim. The respondent set up as an answer to the application that in passing the resolution authorizing the contract with the appellant the board of supervisors acted in excess of its jurisdiction and authority, and that the contract itself was invalid for the reason that no proposals or bidding therefor were invited by the board of supervisors, and that the contract was let without any opportunity for competition. It was shown at the hearing in the superior court that the roadway of Van Ness avenue from Pacific avenue to Jackson street was accepted by the board of supervisors February 24, 1880, under the provisions of the act amendatory of the street law passed April 4, 1870. It was admitted on behalf of the petitioner that none of the acts or steps provided for by section 3 or by section 5 of the street improvement act of March 18, 1885, had been taken or done; that no invitations for sealed proposals or bids for doing the work had been given, and that the contract for the work was made solely by virtue of the resolution of July 8, 1895. The court granted a nonsuit, and denied the petitioner's

application for the writ of mandate. Judgment was thereupon entered in favor of the defendant, from which the plaintiff has appealed.

Section 5 of the street improvement act (Stats. 1889, p. 160) declares that, "Before the awarding of any contract by the city council for doing any work authorized by this act, the city council shall cause notice with specifications to be posted conspicuously for five days, on or near the council chamber door of said council, inviting sealed proposals or bids for doing the work ordered"; and that the notice of this posting shall be published in the official paper. The section then provides the mode of making proposals for doing the work, and that they shall be examined and declared by the city council in open session, and that "the city council may reject any and all proposals or bids should it deem this for the public good, and also the bid of any party who has been delinquent and unfaithful in any former contract with the municipality, and shall reject all proposals or bids other than the lowest regular proposal or bid of any responsible bidder, and may award the contract for said work or improvement to the lowest responsible bidder, at the prices named in his bid, which award shall be approved by the mayor or a three-fourths vote of the city council." The requirement that the city council shall reject all proposals or bids other than the lowest regular proposal or bid of any responsible bidder is equivalent to a declaration that it shall not accept any other proposal, although it is not required to accept the lowest bid, since it may, in its consideration for the public good, reject all the bids. The requirement that it shall invite sealed proposals before awarding a contract, as well as its obligation to award the contract to the lowest responsible bidder, is, however, universal, and applies to "any" contract for doing "any" work authorized by the act, irrespective of the character of the street upon which the work is to be done, or of the mode in which the expense is to be paid. Section 20 of the act provides for the acceptance of a street by the

city council after it has been once fully constructed and certain improvements laid therein, and that it shall thereafter " be kept in repair and improved by the said municipality, the expense thereof to be paid out of a fund to be provided by said council for that purpose"; and in subdivision 2 of section 7 it is provided that " after such acceptance the expense of all work thereafter done thereon shall be paid by said city out of the street department fund."    There is, however, no provision in the act which authorizes any different procedure for a contract to do work upon an accepted street from that which is required for work to be done upon an unaccepted street; and the reason for requiring competition and awarding the contract to the lowest bidder would seem to be as great when the compensation is to be paid out of the city treasury as when it is to be collected from the owners of the abutting land.    The advertising for bids is made by the act a condition precedent to the exercise of the power to award " any "contract, and is a limitation upon the mode in which the previous order for the improvement of the street is to be made effective. Until proposals have been received in accordance with such notice the city council has no jurisdiction to enter into a contract for the improvement.    In *Raisch* v. *San Francisco*, 80 Cal. 1, the same question was under consideration, and it was held that the provisions of the act were equally applicable to a contract for work done upon an accepted street for which payment is to be made directly from the city treasury, as when the expense of the work is to be collected through an assessment upon the adjacent land.    In that case the supervisors had extended the time for the completion of a contract after the time fixed therefor by the contract had expired, and it was urged that as the city alone was interested in the contract, and the extension had been made by its own representatives—the board of supervisors—the objection was not available to defeat its liability; but the court held that the question was not one of estoppel, but of the construction of a statute and of

the power to be exercised thereunder, saying: "The provision which forbids extensions of time after the expiration of the contract time is general and comprehensive, and applies to all contracts made under the act. There is nothing in the language used to limit it to any particular class of contracts, or to any particular class of streets, and we could not, without engrafting an exception upon the statute, sustain the contention of the appellant in this regard." The same principles require us to hold that the board of supervisors had no power to direct the superintendent to enter into a contract for doing the work in the present case, unless it had been awarded to the lowest responsible bidder, after proposals to do the work had been invited under the provisions of section 5.

The board of supervisors has no plenary authority to improve its streets, either by virtue of the consolidation act, or under the provisions of the street improvement act. Its power upon this subject, which was originally included in the consolidation act, was expressly repealed by subsequent acts of the legislature, and these in turn have been superseded by the statute commonly called the Vrooman act. To the latter act alone must it look for all authority in the matter, and under the familiar rule that the mode is the measure of the power, this authority is limited by the requirements therein provided for its exercise. The power to order the improvement of an accepted street is not conferred by section 20. That section merely fixes the obligation upon the city to bear the entire expense of such improvement. The power to order the work is conferred by the first section of the act, and the character of the work which may be ordered is defined in the second section. Section 1 of the act gives to the city council jurisdiction to order any of the work mentioned in section 2 to be done upon the streets of the city, and the jurisdiction or power with which the council is thus invested extends to "*all* streets, lanes, alleys, places or courts" in the city, and is in all cases to be exercised "under the pro-

visions hereinafter described." The subsequent provision in section 20 for accepting a street after certain work has been done therein, does not take such accepted street from the jurisdiction thus conferred upon the city council or remove the limitations upon the exercise of this jurisdiction. The accepted street still remains subject to the power of the city council to order its improvement, and the provision in section 20 requiring the municipality to improve such street at its own expense is subordinate to the provision in section 2 that the city council shall order such improvement "whenever the public interest or convenience may require"; but whenever such order is made, the provision of section 1 requires that the work must be done "under the proceedings" described in the act.

The facts shown by the record herein do not present for determination the power of the city to "repair" an accepted street under the provisions of section 25 of the act. The contract in question does not purport to be for repairing the street—its terms being "to pave the following streets with bituminous rock laid on a macadam foundation"; and it is not alleged, nor was it shown at the trial, that the street in question had ever been paved with bituminous rock. It would be in violation of a proper construction of the term "repair," to hold that it included an original improvement of the street, or work of a different character from that previously done thereon. The provisions of the first part of section 25 do not by their terms apply to accepted streets, but merely authorize the city council to "repair" streets upon which certain work has been done; and the provisions of the latter part of the section requiring advertising and assessment, when the work to be done upon an unaccepted street is new work of the same character as had been previously done, cannot be construed as importing into the first part of the section a condition that the repairs therein authorized are to be made upon an accepted street. We must assume that if the legislature had intended that the express provision which it

made in section 20 for the improvement and repair of accepted streets, and for a fund out of which the expense should be paid, should be superseded by the provisions of section 25, it would have so declared in some direct or unequivocal language.

. We do not hold that, before the city council can order the improvement of an accepted street, it is requisite to observe all the steps prescribed in section 3 of the act. By their very terms it is seen that they are intended solely for the benefit and protection of the owners of the property which may be assessed for the expense of the work; but if no part of this expense is to be charged against the property, many, if not all, of these steps would be vain and purposeless, and without the scope of the statute.    The purpose and scope of these requirements is indicated by the provision that, after they have been observed, " the city council shall be deemed to have acquired jurisdiction to order any of the work to be done."    The term "jurisdiction," implies that the person or tribunal which has " acquired" it, is thereby empowered to declare or establish an enforceable charge or liability against the person or subject over which it has been acquired; but, in the matter under consideration, if no charge or lien is to be established against the adjacent property, the necessity of thus acquiring jurisdiction therefor does not arise.

The proposition that, because the board of supervisors has passed an authorization for payment for the work after its completion, the plaintiff is entitled to recover, cannot be maintained.    This proposition is independent of the proceedings under the street improvement act, and concedes the invalidity of these proceedings, but rests upon the estoppel against the city by virtue of its promise to pay for the benefits received by it by reason of the performance of the contract.    The invalidity of the plaintiff's contract under the street improvement act places it in the same position as any other person dealing with the city under the authority conferred upon its board of supervisors.    If the board of supervisors did not

have authority to enter into the contract, they could not bind the city by a subsequent authorization for the payment of the contract price. The provision of section 67 of the consolidation act, "The powers of the board of supervisors are those granted in this act, and they are prohibited to exercise any others," and the provisions of section 98 of the same act, "If any expenditures not authorized by this act be incurred, they can never be paid out of the treasury, nor shall they be deemed to constitute or lay the foundation of any claim, demand, or liability, legal, equitable, or otherwise, against the said city and county," preclude any right of recovery by reason of such resolution. In entering into the contract, the plaintiff was charged with knowledge of all the limitations upon the powers of the board of supervisors. He knew that the board had no power to authorize the contract for doing the work, unless it had invited sealed proposals therefor, and he entered into the contract with the knowledge that he had not made any proposal for doing the work. Having thus performed a contract which he knowingly entered into in disregard of statutory requirements, he is not in a position to claim any equitable consideration by reason of its performance. To hold that a municipality may disregard the restrictions which its charter places upon its power of contracting, and that, after a contract entered into in disregard of such restrictions has been performed, its subsequent promise to pay for such performance may be enforced, would set at naught all limitations upon municipal powers, and, as was said in *Sutro* v. *Pettit,* 77 Cal. 337, "put the people in the complete power of careless or unscrupulous officers."

The judgment is affirmed.

GAROUTTE, J., and VAN FLEET, J., concurred.

Hearing in Bank denied.