Filed 8/17/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SAN BERNARDINO COUNTY et al., | |
| Petitioners, | E058359 |
| v. | (Super.Ct.No. CIVDS1201251) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| THE INLAND OVERSIGHT COMMITTEE et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. David Cohn, Judge.

Petition granted.

Theodora Oringher, Todd C. Theodora and Roy Z. Silva; Jean-Rene Basle, County

Counsel, and Mitchell L. Norton, Deputy County Counsel, for Petitioners.

Briggs Law Corporation, Cory J. Briggs, Mekaela M. Gladden and Anthony N.

Kim; Leibold McClendon & Mann and John G. McClendon, for Real Parties in Interest.

1

Real parties in interest The Inland Oversight Committee (IOC) and Citizens for Responsible Equitable Environmental Development (CREED and, together with IOC, plaintiffs), are taxpayer organizations that have brought suit challenging a November 2006 settlement agreement between petitioners County of San Bernardino and San Bernardino County Flood Control District (County) and defendant Colonies Partners, L.P. (Colonies and, together with County, defendants), pursuant to which County paid Colonies $102 million. Plaintiffs seek to have the settlement agreement declared void under state law governing conflicts of interests of government officials, and to force Colonies to disgorge any money already paid pursuant to the agreement.

Now pending before this court are Colonies' appeal of the denial of its special motion to strike the complaint as a strategic lawsuit against public participation (anti-SLAPP motion) pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP statute) and two writ petitions, one brought by County, the other by Colonies, regarding the denial of their respective demurrers. This opinion addresses only County's writ petition; we rule on Colonies' appeal and writ petition in separate opinions, issued contemporaneously herewith.

In its petition, County argues that the respondent trial court erred by overruling County's demurrer, because plaintiffs lack standing. For the reasons stated below, we agree.

# I. FACTS AND PROCEDURAL BACKGROUND[1]

The November 2006 settlement agreement between County and Colonies, pursuant to which County paid Colonies $102 million, resolved a lawsuit brought by Colonies against County alleging that the County had taken 67 acres of Colonies' land for use as part of a regional flood-control facility. That settlement was incorporated into a stipulated judgment, filed January 23, 2007.[2]

County satisfied its obligation under the settlement agreement and stipulated judgment by issuing judgment obligation bonds, pursuant to a resolution by the San Bernardino County Board of Supervisors. Subsequently, County brought a validation action, and obtained a judgment, dated March 29, 2007, declaring the settlement agreement between Colonies and the County, the inverse condemnation judgment, and the bonds issued to satisfy the inverse condemnation judgment to be "valid, legal and binding obligations of [County]."[3]

In 2010, the San Bernardino County District Attorney's Office filed a felony indictment accusing William Postmus, a former county supervisor, of (among other

---

[1] The following factual and procedural summary of the case is taken verbatim from our opinion in *San Bernardino County et al. v. The Superior Court of San Bernardino County; The Inland Oversight Committee et al.*, No. E058020, regarding Colonies' appeal of the denial of its anti-SLAPP motion.

[2] Adopting the practice of the parties in their briefing, we will sometimes refer to this stipulated judgment as the "inverse condemnation judgment."

[3] Again adopting the practice of the parties in their briefing, we will refer to the judgment issued in the validation action as the "validation judgment."

3

things) receiving bribes—disguised as contributions to political action committees (PACs)—from Colonies in exchange for his vote approving the settlement agreement. In March 2011, Postmus pleaded guilty to various bribery-related charges.

In February 2012, plaintiffs filed the present action, and in April 2012, they filed the operative first amended complaint (complaint). The complaint asserts a single cause of action for violation of Government Code section 1090. Plaintiffs seek to have the settlement agreement between Colonies and County declared void as in violation of Government Code section 1090 because of Postmus's personal financial interest; to require Colonies to disgorge any monies received under the agreement; and to enjoin any transfer of monies Colonies received under the agreement.

In May 2012, Colonies filed its demurrer to the complaint, and in June 2012, filed its anti-SLAPP motion. The demurrer first came on for hearing in June 2012, but the matter was continued pending supplemental briefing. Both Colonies' demurrer and its anti-SLAPP motion were set for hearing on September 19, 2012; the trial court overruled Colonies' demurrer, but continued the hearing of Colonies' anti-SLAPP motion.[4] On October 15, 2012, the County filed its demurrer. Both Colonies' anti-SLAPP motion and County's demurrer were heard on December 13, 2012; the trial court overruled the demurrer and denied the anti-SLAPP motion.

---

[4] On the same date, the trial court also ruled on a motion to strike certain language from the complaint; that ruling is not at issue here.

4

In opposition to County's petition, plaintiffs advance three alternative theories as to why they have standing, County's arguments to the contrary notwithstanding. They contend that they have taxpayer standing under either Code of Civil Procedure section 526a or the common law, and they also assert a right to sue "directly under Government Code Section 1090."

"The standard of review for an order overruling a demurrer is de novo." (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182.) Although the matter arrives in this court "by the unusual path of a writ petition . . . the ordinary standards of demurrer review still apply." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747.) Applying those standards, we reject each of plaintiffs' theories of standing, and grant County's petition.

## A. Plaintiffs Do Not Have Standing to Bring a Claim on Behalf of County Under Government Code Section 1090.

Government Code section 1090 forbids public officers from being financially interested in any contract made by them in their official capacity. (Gov. Code, § 1090, subd. (a).) Government Code section 1092 provides that "[e]very contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of *any party* except the officer interested therein." (Gov. Code, § 1092, subd. (a), italics added.) Plaintiffs, however, are not parties to the contract at issue, the settlement agreement between Colonies and the County. Nothing in the plain language of either section 1090

or section 1092 grants nonparties to the contract, such as plaintiffs, the right to sue on behalf of a public entity that may bring a claim as provided in section 1092, but has not done so. Indeed, the Legislature's choice of the word "party" in section 1092—as opposed to, say, "person"—suggests the Legislature intended only parties to the contract at issue normally to have the right to sue to avoid contracts made in violation of section 1090.

Plaintiffs nevertheless assert a right to sue "directly under Government Code Section 1090 in order to have the $102 million settlement agreement declared void." The case law that they rely on, however, does not support their assertion. For example, *Terry v. Bender* (1956) 143 Cal.App.2d 198, addresses an action brought explicitly under Code of Civil Procedure section 526a. (*Terry*, *supra*, at p. 204.) Nothing in the *Terry* opinion is reasonably interpreted to contemplate Government Code section 1090 as an independent source of the plaintiffs' standing, though that statute is discussed as a piece of the substantive law governing the activities of public officials. (See *Terry*, *supra*, at p. 207 [citing Gov. Code, §§ 1090-1092 in summarizing substantive law regarding conflicts of interests of public officials].)

Similarly, in *Gilbane Building Co.v. Superior Court* (2014) 223 Cal.App.4th 1527, the Court of Appeal states that "[t]axpayers may sue under [Government Code] section 1090 in order to have improper contracts declared void." (*Id.* at p. 1532.) In context, however, this statement is best understood to refer to the circumstance that taxpayers who *otherwise have standing* under Code of Civil Procedure section 526a or the common law

6

may assert a claim that a contract is in violation of Government Code section 1090. The quoted language follows the Court of Appeal's ruling that the plaintiff organization had associational standing under Code of Civil Procedure section 526a, based on its status as a representative organization or association of members who would have had standing to bring the action as individuals. (*Gilbane Building Co.*, *supra*, at p. 1531) It is not reasonably interpreted to suggest that Government Code section 1090 grants a cause of action to any taxpayer, as plaintiffs would have it.

*Thomson v. Call* (1985) 38 Cal.3d 633 (*Thomson*) and *Finnegan v. Schrader* (2001) 91 Cal.App.4th 572 are each cases in which taxpayers brought suit claiming violations of Government Code section 1090 as the substantive base of their claims. (*Thomson*, *supra*, at pp. 638-639; *Finnegan*, *supra*, at p. 579.) Neither case, however, contains any discussion of standing. Neither case, therefore, supports plaintiffs' assertion of a right to sue "directly under Government Code Section 1090."[5] (*Murphy v. City of Alameda* (1992) 11 Cal.App.4th 906, 914 ["It is fundamental that cases are not authority for propositions not considered and decided."].)

---

[5] At oral argument, plaintiffs directed our attention to a recent case, *Davis v. Fresno Unified School District* (2015) 237 Cal.App.4th 261, which contains a footnote accepting without detailed analysis the proposition that "either the public agency or a taxpayer may seek relief for violation of [Government Code] section 1090." (*Id*. at p. 297, fn. 20.) Again, however, the issue of standing was not before the court, as it was not raised by the parties. (See *ibid*. [noting that the defendants' demurrer was not brought on the basis of standing].) To the extent this dictum may be read as treating Government Code section 1090 as an independent source of standing, as plaintiffs urge, it relies on the same reading of *Thomson* that we reject in this opinion. We do not find that interpretation persuasive and decline to adopt it.

In short, plaintiffs have identified cases in which taxpayers have successfully sued, claiming violations of Government Code section 1090, even though the taxpayers were not parties to the contract at issue, and therefore were not provided a cause of action by Government Code section 1092. Plaintiffs have identified no authority, however, supporting the proposition that a taxpayer has standing to sue "directly under Government Code section 1090." Because we find no support for plaintiffs' argument in the relevant statutory language or in case law, we reject it. We turn, therefore, to the question of whether plaintiffs might have standing under the usual sources of taxpayer standing, either Code of Civil Procedure section 526a or the common law.

**B. Plaintiffs Lack Taxpayer Standing Under Code of Civil Procedure Section 526a or the Common Law.**

Plaintiffs assert Code of Civil Procedure section 526a or common law taxpayer standing as alternative grounds for allowing them to proceed with their claim. We disagree that either section 526a or the common law allows plaintiffs' claim to survive demurrer, on the facts as alleged.

"[Code of Civil Procedure] [s]ection 526a gives citizens standing to challenge governmental action and is liberally construed to achieve that purpose." (*Daily Journal Corp. v. County of Los Angeles* (2009) 172 Cal.App.4th 1550, 1557 (*Daily Journal*).) Specifically, a suit under section 526a allows the taxpayer to "obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state . . . ."

8

(Code Civ. Proc., § 526a.) Section 526a somewhat broadens the scope of claims that were permissible to the taxpayer in comparison to the common law, which allows taxpayers to sue "in his [or her] representative capacity . . . only in cases involving fraud, collusion, ultra vires, or a failure on the part of the governmental body to perform a duty specifically enjoined." (*Silver v. City of Los Angeles* (1962) 57 Cal.2d 39, 40-41 (*Silver*).) Although the plain text of section 526a authorizes suits only against "any officer . . . or any agent, or other person acting in [a government entity's] behalf" (Code Civ. Proc., § 526a), case law has recognized that a "cause of action exists to recover from the person receiving the money illegally paid, independent of any statute, and . . . the action may be prosecuted by a taxpayer in his name on behalf of the public agency."[6] (*Miller v. McKinnon* (1942) 20 Cal.2d 83, 96 (*Miller*).)

Nevertheless, under either Code of Civil Procedure section 526a or the common law, "[t]axpayer suits are authorized only if the government body has a duty to act and has refused to do so. If it has discretion and chooses not to act, the courts may not interfere with that decision." (*Daily Journal*, *supra*, 172 Cal.App.4th at pp. 1557-1558.) "It is the general rule that a taxpayer cannot maintain an action in behalf of [a government entity] to enforce a claim or demand inuring to the [government entity]." (*Elliott v. Superior Court* (1960) 180 Cal.App.2d 894, 897.) "It has long been held that a

---

[6] County has requested we take judicial notice of certain legislative materials relating to the enactment of Code of Civil Procedure section 526a. These documents are proper subjects of judicial notice (Evid. Code, §§ 452, 459), and plaintiffs filed no opposition to County's request, so the request will be granted. We will not discuss the noticed materials here, however, because they are not necessary for our analysis.

9

government entity's decision whether to pursue a legal claim involves the sort of discretion that falls outside the parameters of waste under section 526a and cannot be enjoined by mandate." (*Daily Journal*, *supra*, at p. 1558.) And because deciding whether to pursue a legal claim is generally an exercise of discretion, rather than "a duty specifically enjoined," the common law too does not normally provide the taxpayer a cause of action to pursue a legal claim on behalf of the government entity. (*Silver*, *supra*, 57 Cal.2d at p. 41.)

*Schaefer v. Berinstein* (1956) 140 Cal.App.2d 278 (*Schaefer*) exemplifies an exception to the general rule. In *Schaefer*, a taxpayer brought suit in representative capacity under the common law, alleging among other things that the defendant city had failed to instigate legal action relating to certain transactions with private defendants that the taxpayer contended were made in violation of Government Code section 1090. (*Schaefer*, *supra*, at pp. 291-292.) The court of appeal allowed the lawsuit to proceed, reversing the judgments on demurrer in favor of many of the defendants, and noting that the facts alleged showed a "failure of the city council to perform a specifically enjoined duty": the city charter included a provision *requiring* the city council to declare such transactions void. (*Id.* at p. 292; see also *id.* at pp. 287 & fn. 2, 301-302.). Similarly, in *Miller*, a former provision of the Political Code made it the "imperative duty" of the county district attorney to "institute suit, in the name of the county," in the circumstances of the case, involving contracts awarded in violation of competitive bidding laws.

10

(*Miller*, *supra*, 20 cal.2d at pp. 86-87, 95; see also *Daily Journal*, *supra*, 172 Cal.App.4th at p. 1559, fn. 6 [collecting similar cases].)

The present case, however, is distinguishable from *Schaefer* and *Miller.* Plaintiffs do not cite any provision of law explicitly requiring the County to pursue any claim it might have under Government Code sections 1090 and 1092, and we have discovered none. Section 1092 itself states that a contract made in violation of section 1090 "*may* be avoided at the instance of any party . . ." and does not suggest that a public agency that is party to such a contract must bring any such claim it may have. (Gov. Code, § 1092, subd. (a), italics added.)

Plaintiffs argue that "compliance with [Government Code] Section 1090 is a nondiscretionary duty specifically enjoining [the County] from making the $102 million settlement agreement in exchange for bribes . . . ." This argument would be more to the point if plaintiffs were seeking to enjoin the County from entering into such a settlement agreement. But that ship has long since sailed. The issue now is the County's decision (or lack thereof) with respect to bringing suit on the basis of the alleged violation of section 1090, and whether this decision is an exercise of discretion or a mandatory duty that County—so far, at least—has failed to perform. For the reasons stated above, it is an exercise of discretion.

To be sure, courts have recognized the necessity of allowing taxpayers to step in and assert claims that otherwise would be within a government entity's discretion where there are allegations of fraud or collusion on the part of the decision-makers. (*Osburn v.*

11

*Stone* (1915) 170 Cal. 480, 482-483 [recognizing "necessity" of allowing taxpayer standing to bring claim on behalf of "a municipality, whose affairs are in the hands of hostile trustees or councilmen . . . ."]; *Daily Journal*, *supra*, 172 Cal.App.4th at p. 1559.) There are no allegations of fact in the complaint, however, showing that any present County official was involved in the alleged bribery scheme leading to Postmus's guilty plea, or is otherwise engaged in fraud or collusion.

In short, County's demurrer should have been sustained, because the complaint does not include adequate facts to demonstrate plaintiffs have standing as taxpayers to assert the claim alleged.

Plaintiffs indicate in their briefing that they are prepared to amend their complaint to add allegations regarding current County supervisors, to establish that the current board's decision not to bring suit is not a legitimate exercise of discretion. Lack of sufficient allegations to establish standing, however, is not the only fatal flaw of plaintiffs' complaint. For reasons we discuss in our opinion ruling on Colonies' writ petition (*Colonies Partners, L.P. v. The Superior Court of San Bernardino County; The Inland Oversight Committee et al*, No. E058044), granting plaintiffs leave to amend would be futile, because plaintiffs' challenge to the validity of the settlement agreement between County and Colonies is barred by the effect of the 2007 validation judgment obtained by County.

## III.  DISPOSITION

The petition for writ of mandate is granted.  Let a peremptory writ of mandate issue, directing the Superior Court of San Bernardino County to vacate its order overruling petitioner's demurrer, and to enter a new order sustaining the demurrer without leave to amend.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.  Petitioner shall recover its costs, if any.

CERTIFIED FOR PUBLICATION


    HOLLENHORST
Acting P. J.

We concur:

    MCKINSTER
J.

    MILLER
J.