Filed 11/9/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGANS FOR OPEN GOVERNMENT, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> PUBLIC FACILITIES FINANCING AUTHORITY OF THE CITY OF SAN DIEGO et al., <br><br> Defendants and Respondents. | D069751 <br><br><br> (Super. Ct. No. 37-2015-00016536-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge. Reversed.

Briggs Law Corporation and Cory J. Briggs; Higgs Fletcher & Mack and Rachel E. Moffitt, for Plaintiff and Appellant.

Mara W. Elliott, San Diego City Attorney, David J. Karlin, Assistant City Attorney and Meghan Ashley Wharton, Deputy City Attorney, for Defendants and Respondents.

At issue here is a municipal ordinance, which authorized the issuance of bonds to be used to refinance the defendants' obligations with respect to construction of a baseball

park.  We find plaintiff taxpayers have standing under Government Code[1] section 1092 to challenge the ordinance on the grounds participants in the proposed transaction violated the conflict of interest provisions of section 1090.  Accordingly, we must reverse the trial court's judgment dismissing plaintiff's complaint, which judgment was entered on the grounds plaintiffs do not have standing to challenge the ordinance.

FACTUAL AND PROCEDURAL BACKGROUND

On March 17, 2015, respondents City of San Diego (the city) and Public Facilities Financing Authority (PFFA)[2] adopted San Diego Ordinance No. 0-20469 and PFFA Resolution No. FA-2015-2, which authorized issuance of 2015 Refunding Bonds (2015 Bonds).  The 2015 Bonds, if issued, will refund and refinance the remaining amount owed by the city on bonds issued in 2007 with respect to construction of the baseball stadium at Petco Park.

On May 18, 2015, San Diegans For Open Government (SDFOG) filed a complaint that challenged the validity of the 2015 Bonds.  SDFOG alleged that it is a nonprofit taxpayer organization and that at least one of its members is a resident of the city. SDFOG alleged, among other claims, that one or more members of the financing team that participated in preparation of the 2015 Bonds had a financial interest in the sale of the bonds and the existence of that interest in turn gave rise to a violation of section 1090. SDFOG sought, among other remedies, declaratory relief.

---

[1]     All further statutory references are to the Government Code, unless otherwise specified.

[2]     All further references to the city include the PFFA.

2

Prior to trial on the merits, SDFOG dismissed all of its substantive claims, other than its allegation the city had violated section 1090. Before commencing trial on the merits of SDFOG's section 1090 claim, the trial court asked for and received briefing from the parties with respect to SDFOG's standing. After considering the parties' briefing and the argument of counsel, the trial court determined, as a matter of law, that because SDFOG was not a party to the bond transaction, it lacked standing to pursue a section 1090 challenge. The trial court dismissed SDFOG's complaint, and judgment was entered in the city's favor. SDFOG filed a timely notice of appeal.

### I

Where, as here, there is no dispute as to the material facts and the appellant only challenges a trial court's interpretation of law, we review the trial court's ruling de novo. (See *Ghirardo v. Antonio* (1994) 8 Cal.4th 791, 799.)

### II

A. Section 1090

Section 1090, subdivision (a) states: "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. Nor shall state, county, district, judicial district, and city officers or employees be purchasers at any sale or vendors at any purchase made by them in their official capacity."

The important policy embodied in section 1090 requires that its prohibitions be vigorously enforced so that in addition to punishing actual fraud and public malfeasance,

3

public officials are not even tempted to engage in prohibited activity.  The court fully set out the policy and the need for vigorous enforcement in *Thomson v. Call* (1985) 38 Cal.3d 633, 647–649 (*Thomson*):  "In *San Diego v. S.D. & L.A. R.R. Co.* [(1872)] 44 Cal. 106, we recognized the conflict-of-interest statutes' origins in the general principle that 'no man can faithfully serve two masters whose interests are or may be in conflict':  'The law, therefore, will not permit one who acts in a fiduciary capacity to deal with himself in his individual capacity . . . . For even if the honesty of the agency is unquestioned . . . yet the principal has in fact bargained for the exercise of all the skill, ability and industry of the agent, and he is entitled to demand the exertion of all this in his own favor.'  (44 Cal. at p. 113.)  We reiterated this rationale more recently in *Stigall v. City of Taft* [(1962)] 58 Cal.2d 565[, 570–571 (*Stigall*)]:  'The instant statutes [§ 1090 et seq.] are concerned with any interest, other than perhaps a remote or minimal interest, which would prevent the officials from exercising absolute loyalty and undivided allegiance to the best interests of the city.'  [Citations.]

"In *Stigall* we relied in part on the reasoning of the United States Supreme Court on a federal penal statute under which a contract was declared to be unenforceable because of a conflict of interest:  ' "The statute is thus directed not only at dishonor, but also at *conduct that tempts dishonor*.  This broad proscription embodies a recognition of the fact that an impairment of impartial judgment can occur in even the most well-meaning men when their personal economic interests are affected by the business they transact on behalf of the Government.  To this extent, therefore, the statute is more concerned with what might have happened in a given situation than with what actually

4

happened. It attempts to prevent honest government agents from succumbing to temptation by making it illegal for them to enter into relationships which are fraught with temptation." ' (*Stigall*, *supra*, 58 Cal.2d at p. 570, quoting *United States v. Mississippi Valley Generating Co.* (1961) 364 U.S. 520.) Implicit in this reasoning is the assumption that the purpose of such statutes is 'not only to strike at actual impropriety, but also to strike at the appearance of impropriety.' [Citation.]

"It follows from *the goals of eliminating temptation*, *avoiding the appearance of impropriety, and assuring the city of the officer's undivided and uncompromised allegiance* that the violation of section 1090 cannot turn on the question of whether actual fraud or dishonesty was involved. Nor is an actual loss to the city or public agency necessary for a section 1090 violation. In *Stigall*, for example, a city councilman had a financial interest in a plumbing company which submitted the lowest bids for a municipal contract. Taxpayers sued to have the contracts declared void. They did not allege 'actual improprieties,' nor did they contend that the contract was unfair, unjust, or not beneficial to the city. [Citation.] On these facts, we nonetheless concluded that the contract violated section 1090, reasoning that the 'object of these enactments is to remove or limit the possibility of any personal influence, either directly or indirectly which might bear on an official's decision, as well as to void contracts which are actually obtained through fraud or dishonest conduct.' [Citations.] [We have] observed that 'it matters not how fair upon the face of it the contract may be, the law will not suffer [the official] to occupy a position so equivocal and so fraught with temptation.' [Citation.]

"In short, if the interest of a public officer is shown, the contract cannot be sustained by showing that it is fair, just and equitable as to the public entity. Nor does the fact that the forbidden contract would be more advantageous to the public entity than others might be have any bearing upon the question of its validity. [Citation]

"Moreover, California courts have consistently held that the public officer cannot escape liability for a section 1090 violation merely by abstaining from voting or participating in discussions or negotiations. [Citations.] Mere membership on the board or council establishes the presumption that the officer participated in the forbidden transaction or influenced other members of the council. [Citations.] Similarly, the full disclosure of an interest by an officer is also immaterial, as disclosure does not guarantee an absence of influence. To the contrary, it has been suggested that knowledge of a fellow officer's interest may lead other officers to favor an award which would benefit him." (*Thomson, supra*, 38 Cal.3d at pp. 647–650, some italics added, some italics omitted; fns. omitted.)

In *Thomson*, taxpayers sued the participants in a transaction in which a member of a city council sold property to a third party and the third party then transferred the property to the city as parkland as a means of fulfilling conditions of a development permit granted by the city. The relative innocence of the city council member, Call, did not prevent enforcement of section 1090. "Mitigating factors—such as Call's disclosure of his interest in the transaction, and the absence of fraud—cannot shield Call from liability. Moreover, the trial court's remedy—allowing the city to keep the land and imposing a money judgment against the Calls—is consistent with California law and with

6

the primary policy concern that every public officer be guided solely by the public interest, rather than by personal interest, when dealing with contracts in an official capacity. Resulting in a substantial forfeiture, this remedy provides public officials with a strong incentive to avoid conflict-of-interest situations scrupulously." (*Thomson, supra*, 38 Cal.3d at p. 650, fn. omitted.)

B. Standing Jurisprudence

Although section 1090 was enacted in 1943 (see Stats. 1943, ch. 134, p. 956), only quite recently has the issue of standing been directly litigated.

The court in *Thomson* assumed, without discussion, that the taxpayers had standing to bring a section 1090 challenge to the transaction and found the transaction in fact violated section 1090. (*Thomson*, *supra*, 38 Cal.3d at p. 646.) Significantly, the court found the important public policy manifested in the statute justified a fairly harsh remedy: even though the councilman had acted in good faith and was required to return the $258,000 he had received in the transaction, the city was permitted to retain the land which had been transferred to it. (*Id*. at pp. 646–649.) Although the court did not speak directly to the question of standing or the applicability of Code of Civil Procedure, the court emphasized that "*civil liability* under section 1090 is not affected by the presence or absence of fraud, by the official's good faith or disclosure of interest, or by his nonparticipation in voting; nor should these considerations determine the civil remedy." (*Thomson,* at p. 652.)

In *Davis*, taxpayers also challenged a lease-leaseback construction contract on the grounds the construction company that received the contract was, by virtue of consulting

7

services it provided to the city, subject to section 1090.  The court in *Davis* noted that, under section 1092, any contract made in violation of section 1090 may be avoided by " 'any party.' "  (*Davis v. Fresno Unified School Dist.* (2015) 237 Cal.App.4th 261, 297.)  In what is plainly dicta, the court then stated:  "The term 'any party' is not restricted to parties to the contract.  Defendants did not base their demurrer on the ground Davis lacked standing to bring the conflict of interest claim under Government Code section 1090 since it is recognized that either the public agency or a taxpayer may seek relief for a violation of section 1090.  (E.g., [*Thomson, supra*,] 38 Cal.3d 633 [taxpayer suit successfully challenged validity of land transfer from city council member through intermediaries to city]; see Kaufmann & Widiss, *The California Conflict of Interest Laws* (1963) 36 So.Cal. L.Rev. 186, 200.)"  (*Id*. at p. 297, fn. 20.)

The assumption in *Thomson* and the dicta in *Davis* are consistent with the unspoken assumptions in at least four other cases that have come to our attention:  *Stigall, supra*, 58 Cal.2d at pp. 570–571, *Gilbane Building Co. v. Superior Court* (2014) 223 Cal.App.4th 1527, 1531 (*Gilbane*), *Finnegan v. Shrader* (2001) 91 Cal.App.4th 572, 579 (*Finnegan*), and *Terry v. Bender* (1956) 143 Cal.App.2d 198, 204 (*Terry*).  In each of those cases, taxpayers were permitted to challenge government contracts on the grounds they violated section 1090.  In *Stigall*, in addition to assuming taxpayers have standing, the court held the policy underlying section 1090 was so fundamental that it applied even when the party who received the challenged contract was the lowest bidder and even when that party was not a member of the city council when the bid was accepted, but had

8

only participated in preliminary approvals of the subject project. (*Stigall*, at pp. 570–571.)

In *Gilbane*, which was decided by this court, in addition to assuming that Code of Civil Procedure section 526a provided standing to bring a section 1090 claim, we found that the fact SDFOG alleged that one of its members resided within and paid taxes to the school district which was the subject of SDFOG's claim was sufficient to give SDFOG standing under section Code of Civil Procedure section 526a. In doing so we relied on an earlier case we decided, *Taxpayers for Accountable School Bond Spending v. San Diego Unified School District* (2013) 215 Cal.App.4th 1013, 1032.

More recently courts have *directly* considered the issue of standing to bring an action under section 1090. These case have reached somewhat conflicting conclusions. In *San Bernardino County v. Superior Court* (2015) 239 Cal.App.4th 679 (*San Bernardino*), a group of taxpayers challenged a settlement agreement a county and flood control district had reached with a property owner with respect to property the county had taken as part of a regional flood control project. Under the terms of the settlement the county and district agreed to pay the property owner $102 million; significantly, the county obtained a judgment validating the agreement. Five years later, the taxpayers brought their action under section 1090, in which they alleged that campaign contributions the property owner had made to a former county supervisor were in fact bribes and invalidated the settlement.

In a writ proceeding, the Court of Appeal found the plaintiff taxpayers did not have standing to challenge the settlement. The *San Bernardino* court found that although

9

section 1092 provides that "[e]very contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of *any party* except the officer interested therein," the taxpayers were not parties to the contract and thus section 1092 did not provide the taxpayers with standing. The court stated: "Nothing in the plain language of either section 1090 or section 1092 grants nonparties to the contract, such as plaintiffs, the right to sue on behalf of a public entity that may bring a claim as provided in section 1092, but has not done so. Indeed, the Legislature's choice of the word 'party' in section 1092—as opposed to, say 'person'—suggests the Legislature intended only parties to the contract at issue normally have the right to sue to avoid contracts made in violation of section 1090." (*San Bernardino*, *supra*, 239 Cal.App.4th at p. 684.)

The court in *San Bernardino* also rejected the plaintiffs' contention they had standing under Code of Civil Procedure section 526a. By its terms Code of Civil Procedure section 526a permits "[a]n action to obtain a judgment, *restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds,* or other property of a county, town, city or city and county of the state, . . . against any officer thereof, or any agent, or other person, acting in its behalf." (Italics added.) The court in *San Bernardino* noted that " '[t]axpayer suits are authorized only if the government body has a duty to act and has refused to do so. If it has discretion and chooses not to act, the courts may not interfere with that decision.' [Citation.]" (*San Bernardino, supra*, 239 Cal.App.4th at p. 686.) The court further noted that a public agency's decision to bring or not bring legal action is generally an exercise of discretion and hence Code of Civil Procedure section 526a did not provide the taxpayers with standing to challenge the

10

county's apparent decision *not to* challenge validity of the settlement.  (*San Bernardino,* at pp. 686–687.)  Importantly in rejecting the plaintiffs' contention that the county had no discretion with respect to its obligations under section 1090, the court drew a distinction between prospective action by a governmental agency and fully executed contracts, such as the settlement.  The court found that the plaintiffs' contention with respect to the county's duties:  "would be more to the point if plaintiffs were seeking to enjoin the County from entering into such a settlement agreement.  But that ship has long since sailed.  The issue now is the County's decision (or lack thereof) with respect to bringing suit on the basis of the alleged violation of . . . section 1090, and whether this decision is an exercise of discretion or a mandatory duty that County—so far, at least—has failed to perform."  (*San Bernardino,* at p. 687.)

In *McGee v. Balfour Beatty Construction, LLC* (2016) 247 Cal.App.4th 235, 247–248 (*McGee*), the court disagreed with the reasoning in *San Bernardino* and found that taxpayers had standing to bring an action alleging violation of section 1090.  In *McGee*, like *Davis* the plaintiffs challenged the validity of a lease-leaseback transaction between a school district and a construction company on the grounds, among others, that in providing consulting and other services to the district, the construction company filled the roles of officers, employees and agents of the district and, therefore, the construction company was subject to section 1090.  The court in *McGee* determined that the taxpayer plaintiffs had standing to raise a section 1090 challenge to the validity of the lease-leaseback transaction and that their allegation the construction company was, by virtue of the services it provided, subject to section 1090, was sufficient to survive a demurrer.

11

(*McGee,* at pp. 248–249.)  With respect to the issue of standing, the court in *McGee* relied on the opinions in *Thomson* and *Davis* and distinguished *San Bernardino* on the grounds the court in *San Bernardino* itself suggested, i.e., that unlike the proceedings in *San Bernardino*, the plaintiffs in *McGee* initiated their complaint as a validation action before the disputed contract had been performed.  "As in *Davis*, this case involved a validation action . . . In contrast, in *San Bernardino*, plaintiffs' challenge to the agreement was barred by a prior validation judgment."  (*McGee,* at p. 248.)  The court further determined:  "[I]n contrast to the *San Bernardino* court, we find *Thomson . . . , supra*, 38 Cal.3d 633 apposite as our high court could not have concluded a contract was invalid in violation of section 1090 without implicitly concluding that the taxpayers challenging it had standing to challenge it."  (*Ibid.*)

More recently the court in *California Taxpayers Action Network v. Taber Construction, Inc.* (2017) 12 Cal.App.5th 115, 144–145 (*California Taxpayers*), considered another section 1090 challenge to a school district's lease-leaseback transaction.  The court agreed with the reasoning of the courts in *Davis* and *McGee* and found standing.  In disagreeing with, as well as distinguishing, *San Bernardino*, the court in *California Taxpayers* stated:  "We conclude that *Davis* and *McGee* are more like this case than *San Bernardino*, and the weight of authority supports permitting a taxpayer to bring a claim under . . . section 1090 under the circumstances here. If the lease-leaseback agreement in this case violates section 1090, then it is void, not merely voidable. Whether the lease-leaseback agreement is void is not a matter within the School District's discretion.  [Citation.]  And, even assuming *San Bernardino* was correctly decided under

12

its facts, the case is distinguishable (as it was in *McGee*). . . . [I]n *San Bernardino*, a prior, validation action had concluded long before the plaintiffs sued; here, plaintiff's action is itself a reverse validation action." (*California Taxpayers,* at pp. 144–145.)

C. Analysis

The strict and important policy embodied in section 1090, which in *Thomson* required imposition of a substantial forfeiture on an official who had acted in good faith, will not be vindicated if public officials believe section 1090's substantive provisions may only be enforced by the very public officials or public entities who have violated the statute's provisions. Plainly, a public official's duty to avoid *even temptation* cannot be advanced by adopting a rule which limits civil enforcement to that public official or public entities controlled by the official. The self-evident nature of this proposition—that civil enforcement of section 1090 was never intended to be left in all cases to the parties to a government contract—arguably explains the silence of the courts *Stigall*, *Thomson*, *Gilbane*, *Finnegan* and *Terry,* as well as the brief footnoted dicta in *Davis*.

The conflict between these cases, as well as the recent opinions in *McGee* and *California Taxpayers* on one hand, and *San Bernardino* on the other hand, is, in the end narrower than appears at first blush. Notwithstanding the important public policies embodied in section 1090, a validation judgment, such as the one the defendants obtained in *San Bernardino* long before the complaint attacking the settlement was filed, plainly barred any attack on the validity of the settlement agreement and thus, in that sense at least, deprived the plaintiffs of standing to attack the judgment. (See Code of Civ. Proc., § 870, subd. (a); *Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 844.) Code

13

of Civil Procedure section 870, subdivision (a) states: "The judgment, if no appeal is taken, or if taken and the judgment is affirmed, shall, notwithstanding any other provision of law including, without limitation, Sections 473 and 473.5, thereupon become and thereafter be forever binding and conclusive, as to all matters therein adjudicated or which at that time could have been adjudicated, against the agency and against all other persons, and the judgment shall permanently enjoin the institution by any person of any action or proceeding raising any issue as to which the judgment is binding and conclusive." In light of the broad and conclusive impact of the validation judgment, the limitations on application of section 1092 and Code of Civil Procedure section 526a the court in *San Bernardino* discussed were not necessary to reach its holding that the plaintiffs' claims were barred.[3]

In any event, we do not agree with the limited interpretation of section 1092 adopted by the court in *San Bernardino*. As we have indicated, the weight of authority plainly finds that standing to assert section 1090 claims goes beyond the parties to a public contract. Because of that authority and the important and strict policy embodied in section 1090, we interpret section 1092's reference to "any party" to include any litigant with an interest in the subject contract sufficient to support standing. (See *Davis, supra*, 237 Cal.App.4th at p. 273, fn. 4.) In this regard, we believe the cases which have discussed the interests which support standing under Code of Civil Procedure sections

---

[3] In contrast to *San Bernardino* of course, *Davis*, *McGee* and *California Taxpayers* were each themselves timely reverse validation actions brought under Code of Civil Procedure section 863 and hence not subject to the bar of a validation judgment as set forth in Code of Civil Procedure section 870.

14

526a and 863 provide some guidance with respect to interests sufficient to support standing under section 1092. With respect to Code of Civil Procedure section 526a, our Supreme Court has recently found that it requires that a plaintiff "allege she or he has paid, or is liable to pay, to the defendant locality a tax assessed on the plaintiff by the defendant locality." (*Weatherford v. San Rafael* (2017) 2 Cal.5th 1241, 1252 (*Weatherford*).) Similarly, cases have consistently held that taxpayers of a municipality have standing as interested parties to bring a reverse validation action under Code of Civil Procedure section 863. (See *Regus v. City of Baldwin Park* (1977) 70 Cal.App.3d 968, 971–973.) SDFOG has alleged the taxpayer interests required by both Code of Procedure sections 526a and 863; indeed, the city has conceded SDFOG has alleged an interest sufficient to maintain a reverse validation action under Code of Civil Procedure section 863. Thus, SDFOG has alleged an interest which is sufficient to provide it with standing under the narrower provisions of section 1092.[4] Accordingly, the trial court erred in dismissing plaintiff's complaint and its judgment must be reversed.

---

[4]     Because SDFOG has alleged its interest on behalf of a taxpayer who is a resident of the city, we do not consider what other circumstances might also support standing under section 1092. Nonetheless we note that the requirement imposed on mandate applicants by Code of Civil Procedure section 1086, that they have a beneficial interest in the relief requested, has been repeatedly waived where " ' " 'the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty.' " ' [Citations.]. . . . [[A] party's interest ' "in having the laws executed and the duty in question enforced" ' is sufficient even absent a '"legal or special interest" '].) This exception to the beneficial interest requirement protects citizens' opportunity to 'ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right.' [Citation.]" (*Weatherford, supra*, 2 Cal.5th at p. 1248.)

          Although the cases which have discussed standing under Code of Civil Procedure sections 526a and 863 have informed our application of section 1092, we need not and do

DISPOSITION

The judgment is reversed.  SDFOG to recover its costs on appeal.

BENKE, Acting P. J.

WE CONCUR:

HUFFMAN, J.

HALLER, J.

not determine whether, on this record standing is also available under those Code of Civil Procedure provisions.

16