Filed 3/7/22  Garvey Equipment v. Dept. of General Services CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| GARVEY EQUIPMENT COMPANY, | |
| Plaintiff and Appellant, | C091295 |
| v. | (Super. Ct. No. 34-2018-00226807) |
| DEPARTMENT OF GENERAL SERVICES et al., | |
| Defendants and Respondents; | |
| RKU DISTRIBUTING, INC., | |
| Real Party in Interest and Respondent. | |

The California Department of Transportation (CalTrans), acting through the Department of General Services (DGS), solicited bids for brush and tree chippers and training, repair, and associated services.  Garvey Equipment Company (Garvey) and RKU Distributing, Inc. (RKU) submitted bids.  The contracts were awarded to RKU.  Garvey then sued DGS, CalTrans, and later the Controller's Office, to obtain a judicial declaration that RKU contracted to provide chippers with certain features and services using its own workforce, and the State has the right to recover monies paid to RKU for

1

chippers and services that differed from what was required under the contracts. Garvey also sought to enjoin the State from paying RKU for chippers and services that differed from what was required under the contracts and to require RKU to repay all monies it received for non-compliant chippers and services. The trial court granted motions by DGS and RKU for summary judgment and summary adjudication.

Garvey now contends (1) DGS asserted in its summary judgment/adjudication motion that CalTrans could accept chippers that were significantly different from those RKU had competitively bid and for which contracts were awarded, but CalTrans could not lawfully do so; (2) the trial court erred in finding that the contracts were substantially performed and that the action was moot; (3) the trial court erred in granting summary judgment and adjudication to DGS and RKU because their separate statements of undisputed material facts did not specify what chippers the contracts required or RKU actually supplied, and without such facts DGS and RKU could not establish that the action was moot based on substantial performance; and (4) the trial court erred in concluding that Garvey had no standing as a taxpayer under Code of Civil Procedure section 526a.[1]

We conclude (1) the portions of the record Garvey cites do not support its claim about what DGS asserted in its summary judgment/adjudication motion; (2) the portion of Garvey's fourth cause of action seeking to prevent state payment to RKU is moot, and summary adjudication was proper on that cause of action because there is no triable issue of material fact as to whether the chippers RKU supplied were different from what RKU had contracted to provide; (3) supported by the declaration of Mike Ursitti, DGS and RKU's separate statements of undisputed material facts showed that RKU had completed or substantially completed its performance under the contracts and that CalTrans had paid

_____

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

RKU the full amount under the purchase orders; and (4) no triable issue of material fact has been established regarding taxpayer standing and the trial court did not err in granting DGS and RKU summary adjudication on the declaratory relief causes of action because those causes of action relate to completed acts only. We will affirm the judgments.

BACKGROUND

DGS, on behalf of CalTrans, issued an invitation to bid for the purchase of nine brush chippers and associated training, maintenance and repair services and a separate invitation to bid for the purchase of six tree chippers and associated training, maintenance and repair services. The invitations to bid provided that the contracts would be awarded to the lowest responsive and responsible bidder meeting all of the administrative and technical requirements and terms and conditions of the solicitations for bids. The invitation to bid for brush chippers required an engine with a minimum rating of 115 horsepower. The invitation to bid for tree chippers required an engine with a minimum rating of 315 horsepower and a boom that stowed within the limits of the trailer edges for transport.

Garvey and RKU submitted bids in response to the invitations to bid. When DGS posted notices of intent to award the contracts to RKU, Garvey challenged RKU's bids. Garvey asserted that RKU (1) proposed chippers with engines and infeed chutes that did not meet the contract specifications, (2) failed to list Cal-Line Equipment as a subcontractor, (3) did not satisfy the commercially useful function requirement, and (4) misrepresented a past contractual relationship with Cal-Line Equipment.

An arbitrator denied Garvey's bid protests and upheld the award of the contracts to RKU. The arbitrator found that RKU provided the lowest bid on both invitations to bid. RKU proposed the Brush Bandit 150XP by Brush Bandit Industries in response to the invitation to bid for brush chippers. The engine of the Brush Bandit 150XP had a horsepower rating in excess of the minimum 115 horsepower rating required in the specifications. The arbitrator found the fact that Cal-Line Equipment may provide some

3

warranty and service work on behalf of RKU did not nullify RKU's bid. RKU proposed the Brush Bandit Intimidator 21XP, which had a Caterpillar C 7.1L engine, in response to the invitation to bid for tree chippers. The 21XP satisfied the minimum horsepower rating in the specifications. The arbitrator concluded that Garvey failed to establish that the engine RKU proposed did not comply with the contract specifications and that Garvey offered no competent evidence to support the other assertions in its bid protests.

DGS issued purchase orders to RKU in relation to the invitations to bid, following the arbitrator's decisions.

Garvey filed a petition to vacate the arbitration awards and complaint for declaratory and injunctive relief against the State of California, acting through DGS, on behalf of CalTrans. The trial court denied Garvey's petition to vacate the arbitration awards and upheld the award of the contracts to RKU. The record does not show that Garvey sought judicial review of that order. The trial court also sustained DGS and RKU's demurrers to the complaint with leave to amend, concluding that the complaint improperly sought to modify or nullify the arbitrator's decisions. The trial court also denied Garvey's motion for a preliminary injunction with regard to the purchase order for tree chippers, finding that Garvey failed to present evidence that a great or irreparable harm was imminent unless an injunction issued.[2]

Garvey filed a second amended complaint against the State, acting through DGS, CalTrans and the Controller's Office. In the second cause of action, Garvey sought a declaration that RKU contracted to provide the C3.4 engine with 122.5 horsepower "in the engine family ending 3.4 ESD listed on the Executive Order ending in 0342" in the purchase order for brush chippers, and the engine "identified by Engine Code 4464/1800

___

[2] At the time the trial court denied Garvey's preliminary injunction motion, RKU had already delivered the brush chippers under its contract with DGS/CalTrans and received full payment under the purchase order for brush chippers.

on the Executive Order ending in 0529" in the purchase order for tree chippers, and the State has the right to recover funds paid to RKU for chippers containing engines other than those for which RKU had contracted. In the third cause of action, Garvey sought a declaration that RKU must perform substantially all training, warranty, technical assistance and repair services required under the purchase orders with its own workforce and the State has the right to recover from RKU the value of services provided through subcontractors. In the fourth cause of action, Garvey sought to enjoin the State from paying RKU for chippers other than those identified in the contracts and for services not provided by RKU's own workforce. Garvey also sought an order directing RKU to repay all monies it received from the State for chippers not provided for in the contracts.

DGS filed a motion for summary judgment or, in the alternative, summary adjudication on the grounds of lack of standing, lack of an actual controversy and that a judicial declaration was not necessary or proper. RKU filed a similar motion on the grounds of mootness, lack of standing and that declaratory relief was unavailable to redress past wrongs.

RKU submitted the declaration of RKU's president Mike Ursitti in support of its motion. Ursitti averred that by August 2018, RKU had delivered the brush and tree chippers it had contracted to provide; CalTrans accepted all of the brush and tree chippers delivered; all training under the purchase orders had been completed; and as of September 2018, RKU had received full payment from CalTrans for the brush and tree chippers.

The deposition testimony of Ron Frank, a person CalTrans designated as the person most qualified in response to Garvey's notice of deposition, showed that CalTrans approved all of the tree chippers RKU delivered and CalTrans considered the chippers RKU provided fully compliant with the technical requirements of the purchase order. According to Frank, all of the chippers delivered by RKU under the tree chipper purchase order were invoiced, paid for and in service. Frank also testified that CalTrans had

5

concluded that the boom of the chipper RKU supplied stowed within the edges of the trailer transport. John Hironaka, another person CalTrans designated as a person most qualified in response to Garvey's deposition notice, likewise testified that the boom of the machine RKU presented for inspection under the tree chipper purchase order met the technical requirements of the specifications.

The trial court granted DGS and RKU's motions. It concluded that DGS and RKU were entitled to summary judgment because Garvey's claims for declaratory and injunctive relief were moot. It further concluded that Garvey lacked standing to assert claims on behalf of the parties to the purchase orders, and declaratory relief was not available to those who had no direct interest in the performance of a contract. It also ruled that Garvey's claims based on taxpayer standing failed because they were based on legal claims the State had the discretion to pursue or to forbear from pursuing. The trial court further ruled that DGS and RKU were entitled to summary adjudication on the declaratory relief causes of action because there was no longer an actual controversy inasmuch as the contracts had been substantially performed and a declaration concerning Garvey's allegations would not be necessary or proper where the contracts had been substantially performed and Garvey was not a party to the contracts. The trial court said that although Garvey asserted there were triable issues of material fact as to whether the contracts were void because RKU did not deliver the correct chippers, there were no facts presented in the opposition establishing a void contract.

The trial court entered judgments in favor of DGS, the Controller's Office, and RKU. We deem Garvey's appeal from the orders granting summary judgment as an appeal from the summary judgments. (*Saben, Earlix & Associates v. Fillet* (2005) 134 Cal.App.4th 1024, 1030 [a summary judgment is appealable, but an order granting summary judgment is not].)

6

## STANDARD OF REVIEW

We review an order granting summary judgment or adjudication de novo, employing the same three-step analysis as the trial court. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860; *Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 503.) First, we identify the issues framed by the pleadings because it is those allegations to which the motion must respond. (*Hamburg,* at p. 503.) We then determine whether the defendant's showing establishes facts which negate the plaintiff's claims and justify a judgment in the defendant's favor. (*Ibid.*) If the defendant makes such a showing, we determine whether the plaintiff has demonstrated the existence of a triable, material issue of fact. (*Ibid.*) The trial court's stated reasons for granting summary judgment or adjudication are not binding on us because we review its ruling, not its rationale. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336; *California School of Culinary Acts v. Lujan* (2003) 112 Cal.App.4th 16, 22 [" 'the appellate court may affirm a summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court.' "].)

## DISCUSSION

### I

Garvey contends DGS asserted in its summary judgment/adjudication motion that CalTrans could accept chippers that were very different from those RKU had competitively bid and for which CalTrans awarded the subject contracts. For support, Garvey cites DGS's responses to Garvey's additional undisputed material facts (UMF) Nos. 2 through 6 and 9 through 13. Garvey urges that CalTrans could not accept and pay for chippers different from those competitively bid and for which DGS had awarded contracts.

Without deciding whether Garvey's assertion, if true, would be dispositive, we note that the portions of the record Garvey cites do not support its contention. Garvey's

UMF 2 through 6 and 9 through 13 relate to the features of the chippers RKU offered to supply in response to the invitation to bid for tree chippers and what RKU contracted to provide under the purchase orders and the features of the chippers RKU actually provided CalTrans. In response to Garvey's UMF 2 through 3 and 9 through 13, DGS stated that "DGS's motion [was] based on the premise that even if RKU delivered a different engine than the one it contracted to deliver (which DGS [had] no reason to believe occurred), Garvey's claims [were] moot." DGS did not assert in its summary judgment/adjudication motion that CalTrans could accept chippers that differed from those RKU had competitively bid and for which it was awarded the subject contracts.

II

Garvey next argues the trial court erred in finding that the contracts were substantially performed and that the action was moot. Garvey claims the contracts were not substantially performed because the chippers RKU provided were different from what the contracts required.

It is the duty of judicial tribunals to decide actual controversies by a judgment which can be carried into effect, and not to give opinions on moot questions or declare principles or rules of law which cannot affect the case before it. (*Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714, 722.) The pivotal question in determining if a case is moot is whether the court can grant the plaintiff any effectual relief. (*Ibid.*) The rule precluding consideration of a moot case "has been regularly employed where injunctive relief is sought and, pending appeal, the act sought to be enjoined has been performed." (*Giles v. Horn* (2002) 100 Cal.App.4th 206, 227.)

Here, the fourth cause of action for injunctive relief sought an order (1) enjoining the State from paying RKU for chippers supplied under the brush chipper purchase order that did not have "the C3.4 engine of 123 horsepower (rounded up from 122.5) in the engine family ending 3.4 ESD listed on the Executive Order ending in 0342;" (2) enjoining DGS from paying RKU for chippers supplied under the tree chipper purchase

8

order that did not have "the C7.1 engine identified by Engine Code 4464/1800 on the Executive Order ending in 0529, and otherwise meets the contract specifications;" and (3) enjoining the State from paying RKU for training, warranty, technical assistance and repair services provided under purchase orders 2660-8 and 2660-10 "unless those services are provided by RKU itself, or in such unusual or unexpected circumstances reasonably found by the State to warrant use of an unlisted subcontractor." But it was undisputed that prior to the filing of the defense summary judgment/adjudication motions, CalTrans had paid RKU the full amount of the purchase orders. Because undisputed facts showed that RKU had been fully paid under purchase orders 2660-8 and 2660-10, Garvey's claims for an order enjoining payments to RKU are moot.

The fourth cause of action also requested an order directing RKU to repay all monies paid by the State under the purchase orders for chippers that did not contain "the C3.4 engine of 123 horsepower (rounded up from 122.5) in the engine family ending 3.4 ESD listed on the Executive Order ending in 0342" or "the C7.1 engine identified by Engine Code 4464/1800 on the Executive Order ending in 0529 and a boom storing within the limits of the trailer edges for transport." That portion of the fourth cause of action is not moot. (*Davis v. Fresno Unified Sch. Dist.* (2020) 57 Cal.App.5th 911, 937, review granted Mar. 17, 2021, S266344.) On appeal, Garvey contends RKU breached its contracts with CalTrans by delivering materially non-compliant chippers. Garvey says its UMFs established that the chippers RKU supplied to CalTrans did not comply with the contractual specifications. We disagree.

Garvey's UMF 2 and 9 state that RKU contracted to provide brush chippers with an engine rated at 122.5 horsepower, but the brush chippers RKU provided included an engine rated at only 121 horsepower. Garvey's UMF 2 and 9 fail to show that a brush chipper engine RKU provided to CalTrans did not comply with the brush chipper purchase order. As the arbitrator found, the engine of the brush chipper RKU bid was rated at 121 horsepower at 2,200 rpm, but the same engine was marketed at

9

122.5 horsepower at 2,280 rpm, and RKU wrote 122.5 horsepower on the factory literature questionnaire based on marketing materials for the Brush Bandit chipper RKU bid. Ron Frank testified that an engine can have more than one horsepower rating.

Garvey's UMF 10 states that RKU (through Caterpillar) modified the wiring harness in the brush chippers provided to CalTrans to allow for a low coolant indicator light or alert. But UMF 10 is based on hearsay in an unauthenticated e-mail and letter. Because it is based on inadmissible evidence, Garvey's UMF 10 did not establish that a triable issue of material fact existed.

Garvey's UMF 4 and 11 state that RKU contracted to provide tree chippers with an engine rated at 315 horsepower or greater, but the tree chippers RKU provided included an engine rated at 302 horsepower. However, the arbitrator found the engine of the tree chipper RKU bid, although rated at 301 horsepower at 2,200 rpm, will achieve 321 horsepower at 1,800 rpm.

Garvey's UMF 5 and 12 state that RKU did not bid the engine listed on Executive Order U-R-022-0207, identified as Engine Model 4346/2200, but the tree chippers RKU provided included the engine listed on Executive Order U-R-022-0207, identified as Engine Code 28, Engine Model 4346/2200. Garvey's UMF 5 and 12 are undisputed. However, we cannot conclude from the record that the Bandit Intimidator 21XP and Caterpillar C7.1 engine referenced in RKU's bid are different from the engine model 4346/2200 referenced in UMF 5 and 12. Frank testified that the 4346/2200 engine satisfied the technical requirements stated in the tree chipper purchase order. Hironaka testified that 7.1 liter Caterpillar engines had the same "block size" but could have different software, and engine code merely referred to the engine software.

Garvey's UMF 6 and 13 state that RKU contracted to provide tree chippers that stowed within the limits of the trailer edges for transport, but the tree chippers RKU provided to CalTrans did not include a boom that stowed within the limits of the trailer edges for transport. However, the Hironaka deposition testimony stated that the "limits

of the trailer edges" referred to the side edges, not the back, and the equipment RKU provided complied with the requirement in the specifications that the boom must stow within the limits of the trailer for transport.

Garvey's injunctive relief claims are moot and summary adjudication was proper because there is no triable issue of material fact as to whether the chippers RKU supplied under the purchase orders were different from what RKU had contracted to provide.

III

Garvey further contends the trial court erred in granting summary judgment and adjudication to DGS and RKU because their separate statements of undisputed material facts did not specify the types of chippers the contracts required or that RKU provided; therefore, DGS and RKU could not establish that the contracts were performed or that Garvey's complaint was moot.

Garvey fails to cite authority supporting its contention that DGS and RKU were required to specify in their separate statement of material facts the types of chippers required under the purchase orders and delivered to CalTrans. RKU's separate statement of facts states that RKU delivered nine brush chippers and six tree chippers to CalTrans under the purchase orders; CalTrans inspected and accepted the brush and tree chippers that were delivered; RKU completed all training related to the brush and tree chippers; and RKU received full payment under the purchase orders. DGS's separate statement of undisputed material facts contains similar statements. The facts stated in DGS and RKU's separate statements of facts were supported by the declaration of Ursitti, who prepared RKU's brush and tree chipper bids and was the primary person at RKU in charge of communicating with CalTrans about the chippers, coordinating delivery and training, handling CalTrans's inspection of the chippers, and processing payments under the purchase orders. Ursitti averred he was present for the inspections of the chippers delivered under the purchase orders. Ursitti's declaration was sufficient to show that

11

RKU had completed or substantially completed its performance under the contracts and had been paid the full amount of the purchase orders.

IV

In addition, Garvey claims the trial court erred in concluding that Garvey had no standing as a taxpayer under section 526a [action to prevent waste or injury to funds or property of a local agency].

Although a taxpayer may maintain an action under section 526a to recover illegally expended funds, " '[t]axpayer suits are authorized only if the government body has a duty to act and has refused to do so.  If it has discretion and chooses not to act, the courts may not interfere with that decision.' [Citation.] . . . 'It has long been held that a government entity's decision whether to pursue a legal claim involves the sort of discretion that falls outside the parameters of waste under section 526a and cannot be enjoined by mandate.' " (*San Bernardino County v. Superior Court* (2015) 239 Cal.App.4th 679, 686 (*San Bernardino County*); accord *Sundance v. Municipal Court* (1986) 42 Cal.3d 1101, 1138 [" '[T]he term "waste" as used in section 526a means something more than an alleged mistake by public officials in matters involving the exercise of judgment or wide discretion.' "]; *Daily Journal Corp. v. County of Los Angeles* (2009) 172 Cal.App.4th 1550, 1557-1559 (*Daily Journal Corp.*) [citing other cases holding that a taxpayer may not sue on behalf of the government to enforce a claim belonging to the government or that a taxpayer action does not lie where the county has refused to sue]; *County of San Luis Obispo v. Abalone Alliance* (1986) 178 Cal.App.3d 848, 863 ["Taxpayers do not have the right to sue for public expenditures unless the public agency has: (1) a duty to sue; and (2) refused to so do."].)  Garvey does not identify a statute or other law requiring DGS to file suit to recover the monies paid to RKU under the purchase orders.  *Davis v. Fresno Unified School District, supra*, 57 Cal.App.5th 911, review granted, a case Garvey cited at oral argument, does not address whether a taxpayer action is appropriate where the government entity has

12

discretion to act but chooses not to act or under what circumstances a government entity has a duty to pursue a legal claim.

Moreover, as we have explained, there is no triable issue of material fact supporting Garvey's claim that the chippers RKU supplied to CalTrans did not comply with the requirements for the purchase orders. Thus, no triable issue of material fact has been established regarding an illegal or wasteful expenditure of public funds. (See generally *Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223, 1240 (*Waste Management*) ["the essence of a taxpayer action remains an illegal or wasteful expenditure of public funds or damage to public property."], disapproved on other grounds in *Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 160, 167-168.) Because Garvey lacks standing to sue on the State's behalf under the present circumstances, the trial court did not err in granting summary adjudication in favor of DGS and RKU on the second and third causes of action.

The second and third causes of action also seek a declaration that (1) RKU contracted to provide "the C3.4 engine of 123 horsepower (rounded up from 122.5) in the engine family ending 3.4 <u>ESD</u> listed on the Executive Order ending in 0342" in the brush chipper purchase order and that was the only engine that RKU may supply and for which the State may pay RKU; (2) RKU contracted to provide the engine identified as "Engine Code 4464/1800 on the Executive Order ending in 0529" in the tree chipper purchase order and that was the only engine that RKU may supply and for which the State may pay RKU; and (3) RKU must perform substantially all training, warranty, technical assistance and repair services under the purchase orders with its own workforce and not through subcontractors.

" '[Declaratory] procedure operates prospectively, and not merely for the redress of past wrongs. It serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be

13

used in the interests of preventive justice, to declare rights rather than execute them.' " (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848; accord *TransparentGov Novato v. City of Novato* (2019) 34 Cal.App.5th 140, 148.)  But the requests for judicial declaration in the second and third causes of action relate to completed acts.   The chippers have been delivered, all training has been completed, and CalTrans has paid RKU the full amount of the purchase orders.  The trial court did not err in granting DGS and RKU summary adjudication.

## DISPOSITION

The judgment is affirmed.   Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


<u>     /S/          </u>
              MAURO, Acting P. J.


We concur:


<u>     /S/          </u>
DUARTE, J.


<u>     /S/          </u>
KRAUSE, J.